**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| **JOSEPH D. KEMP,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| **v.** ) | **CV 123-033** |
| ) | **(CR 116-084)** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**GOVERNMENT'S MOTION TO DISMISS KEMP'S**
**28 U.S.C. § 2255 MOTION**

Joseph D. Kemp moves to vacate his sentence under 28 U.S.C. § 2255.  (Doc. 43.)[1]  He asserts that he no longer qualifies as a career offender under the sentencing guidelines.  (Doc. 43 at 4; Doc. 44 at 2-6.)  For the reasons discussed below, the government respectfully requests this Court dismiss Kemp's § 2255 motion.

**BACKGROUND**

*A.   Plea agreement.*

Kemp entered into a written plea agreement with the government, in which he agreed to plead guilty to the Count 9 of the indictment, that is, distribution of methamphetamine.  (Doc. 18, ¶ 1.)  The plea agreement informed Kemp of the elements of the offense, the factual basis, and the statutory range of punishment.  (Doc. 18, ¶¶ 2-3.)  It detailed the constitutional rights Kemp waived by pleading guilty.  (Doc. 18, ¶ 11.)  The plea agreement described the Court's use of the

---

[1] Record citations reference documents filed in the underlying criminal case.

sentencing guidelines and that no one had made any promise about the sentence. (Doc. 18, ¶¶ 4-5.)  The plea agreement also contained a collateral-attack waiver.  (Doc. 18, ¶ 10(b).)   Kemp signed the plea agreement, acknowledging he had read the agreement, understood each provision, and voluntarily agreed to it.  (Doc. 18 at 9.)

### B.     *Rule 11 hearing.*

On January 7, 2017, Kemp pled guilty to Count 9 under the written plea agreement.  (PSR ¶ 5.)  The Court confirmed with Kemp that he wished to plead guilty to Count 9, and that this was his own decision.  (Doc. 46 at 3, 6.)  Kemp stated no one was forcing him to make this decision, and that he had reviewed the charges and the plea agreement with his lawyer.  (Doc. 46 at 3, 7, 10.)  The Court outlined the constitutional trial rights Kemp was waiving by pleading guilty; Kemp understood. (Doc. 46 at 7-10.)  It also reviewed the charge to which Kemp was pleading guilty, along with its elements.  (Doc. 46 at 6, 15-16.)   Kemp understood and had no questions.  (Doc. 46 at 15-16.)  The Court explained the statutory range of punish, its use of the sentencing guidelines, and the 18 U.S.C. § 3553(a) factors.  (Doc. 46 at 12-15.)  Kemp confirmed to the Court that no one had made any promises about his sentence.  (Doc. 46 at 15.)

Next, the Court went over the written plea agreement with Kemp, including the agreement's collateral-attack waiver.  (Doc. 46 at 10-12.)  Kemp acknowledged reading the agreement, reviewing it with his attorney, and understanding the agreement's terms.  (Doc. 46 at 10.)  Kemp acknowledged that he had signed the agreement.  (Doc. 46 at 10.)

The government proffered a factual basis for the plea.  (Doc. 46 at 16-18.)  After that, Kemp indicated that he did not disagree with any of the government's facts and admitted that he had committed the crime.  (Doc. 46 at 18-19.)  Based on the information provided at the hearing, the Court found Kemp knowingly and voluntarily pled guilty, so it accepted his guilty plea.  (Doc. 46 at 19-20.)

### C.    PSR and sentencing.

The U.S. Probation Office prepared a presentence investigation report (PSR).  Based, in part, on Kemp's prior South Carolina convictions for possession with intent to distribute cocaine and possession with intent to distribute marijuana, the PSR concluded he was a career offender under U.S.S.G. §§ 4B1.1(b).  (PSR ¶¶ 20, 38, 42.)  His advisory guidelines range was 151 to 188 months' imprisonment.  (PSR ¶ 66.)  Kemp had no objections to the PSR.  (PSR adden.)

On May 30, 2017, the Court held a sentencing hearing.  (Doc. 26.)  It sentenced Kemp to a low-end guidelines sentence of 151 months' imprisonment.  (Docs. 26, 27.)  The Court filed its judgment on May 31, 2017.  (Doc. 27.)  Kemp did not appeal.

Kemp filed his § 2255 motion on March 29, 2023.  (Doc. 43 at 12.)  He is currently incarcerated at FCI Gilmer with a projected release date of August 27, 2027.[2]

### Relevant Standards

Kemp's burden of proof is high. "A prisoner in custody under sentence of a court

---

[2] BOP Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (last visited Apr. 18, 2023).

established by Act of Congress claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Only claims that are constitutional, jurisdictional, or of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack. *See United States v. Addonizio*, 442 U.S. 178, 184-86 (1979). No evidentiary hearing is required where "the motion and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (denying petition without a hearing where petitioner "failed to allege the kind of 'prejudice' necessary to satisfy the second prong of the *Strickland v. Washington* test.").

## ARGUMENT

### A. *Kemp's complaint about his career offender guidelines calculation is not cognizable under § 2255.*

Kemp's complaint about his career offender guideline calculation is not cognizable under § 2255. *See Spencer v. United States*, 773 F.3d 1132, 1140 (11th Cir. 2014) (en banc) ("Any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory."). Even if Kemp was incorrectly determined to be a career offender, "[b]ecause there has been no 'complete miscarriage of justice,' there can be no collateral review of [Kemp's] sentence." *Id*. at 1144. As the Eleventh Circuit explains, "[a] defendant's erroneous designation as a career offender is not a fundamental defect inherently resulting in a complete

4

miscarriage of justice." *Terry v. United States*, No. 20-11928, 2020 WL 4977478, at *1 (11th Cir. Aug. 19, 2020) (citing *Spencer*, 773 F.3d at 1138).

To the extent Kemp would claim he is "actually innocent" of being a career offender, that argument is misplaced.[3]  In this context, actual innocence refers to factual innocence, not legal insufficiency.  *See McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011).  Here, the alleged error is legal, not factual.  For this reason, there is no miscarriage of justice.  *Spencer*, 773 F.3d at 1138 (holding that "erroneously designating a defendant as a career offender . . . is not a fundamental defect that inherently results in a complete miscarriage of justice").

Based on the above, Kemp's § 2255 motion should be dismissed.

### B.     Kemp's § 2255 motion is untimely.

Additionally, this Court should dismiss Kemp's motion as untimely.  Section 2255(f) contains a one-year statute of limitations for pursuing § 2255 cases under certain circumstances.  One such circumstance is one year from the date on which the judgment of conviction becomes final.  28 U.S.C. § 2255(f)(1).  And another, under § 2255(f)(3), provides a one-year statute of limitations running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  The triggering date, though, remains when the right was

---

[3] The Eleventh Circuit has yet to hold that, in a § 2255 context, a petitioner may claim actual innocence in a noncapital case. *See Spencer*, 773 F.3d at 1176 n.9; *see also Gilbert v. United States*, 640 F.3d 1293, 1321 (11th Cir. 2011) ("[T]he better view is that the exception does not apply to non-capital sentencing errors.").

initially recognized by the Supreme Court.  *See French v. United States*, 732 F. App'x 836, 838 (11th Cir. 2018).

First, as to § 2255(f)(1), Kemp's judgment was entered on May 31, 2017.[4]  (Doc. 27.)  He had until June 14, 2017, to file a notice of appeal, which he did not.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  Thus, Kemp had until June 14, 2018, to file his § 2255 motion.  But he did not file his motion until March 29, 2023—more than 57 months after the deadline.  Kemp appears to recognize his motion is untimely but "humbly wishes that the Court waive the statute of limitations."  (Doc. 43 at 10-11.)  Still, he provides no authority for his request.

For the above reasons, Kemp's § 2255 motion should be dismissed.

### C.  *Kemp procedurally defaulted his career offender claim by failing to raise it on direct appeal.*

Next, Kemp procedurally defaulted his career offender guidelines claim when he did not raise it on direct appeal.  *See, e.g., Granda v. United States*, 990 F.3d 1272, 1285-86 (11th Cir. 2021).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."  *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005).  "A ground of error is usually available on direct appeal when its merits can be reviewed without further *factual* development."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (internal quotation omitted; emphasis added).  A § 2255 motion is not "a surrogate for direct appeal."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004).

---

[4] Kemp was actually sentenced on May 30, 2017.  (Doc. 26.)

6

Thus, in order to pursue a defaulted claim in a habeas corpus case, Kemp must demonstrate both cause and actual prejudice. *See Lilly v. United States*, 792 F.2d 1541, 1544-45 (11th Cir. 1986) (explaining in § 2255 proceeding, movant could not raise Rule 11 violation that he failed to raise on direct appeal because he could not demonstrate cause or prejudice); *see also Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013); *Bousley v. United States*, 523 U.S. 614, 622 (1998). Specifically, Kemp "must show both (1) 'cause' excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Brown*, 720 F.3d at 1333 (internal citation marks omitted). Regarding the cause prong, the defendant must demonstrate that some external impediment prevented him from raising the claim on direct appeal; "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623; *see also Weeks v. Jones*, 52 F.3d 1559, 1561 (11th Cir. 1995). "To demonstrate prejudice, the second prong, [the defendant] 'must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions.'" *Brown*, 720 F.3d at 1333.

Here, Kemp cannot establish cause excusing his procedural default. Nothing prevented Kemp from raising these challenges on direct appeal, and Kemp provides no reasonable and acceptable reason excusing this failure. In his memorandum, Kemp relies on two cases for support—*Mathis v. United States*, 579 U.S. 500 (2016),

and *United States v. Rhodes*, 736 F. App'x 375 (4th Cir. 2018).  Obviously, *Mathis* was decided well before Kemp's guilty plea and sentencing.  And the defendant in *Rhodes* made his arguments about his South Carolina convictions not qualifying under the career offender guideline only a few months after Kemp's sentencing.  *See* Brief of Appellant at 15-18, *Rhodes*, 736 F. App'x 375 (No. 17-4162), 2017 WL 3622872, at *15-*18.  Thus, the building blocks for Kemp's argument existed at the time he was sentenced in his case.  *See McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) (explaining defendant could not demonstrate cause regarding *Apprendi* claim because "the building blocks for arguing it were obviously in existence" at the time he was convicted); *Lynn*, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all."); *Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014) ("Hill also cannot satisfy the cause and prejudice exception because, although his claim was foreclosed by this Court's precedent when Hill was sentenced, the perceived futility of a claim does not establish cause to excuse the default.").

    But, even if Kemp were to demonstrate cause, he cannot establish actual prejudice.  In this context, the actual prejudice must be *constitutional* prejudice.  *See Frady*, 456 U.S. at 170 (holding in § 2255 proceeding, movant "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions").  As described above,

however, a miscalculation of the sentencing guidelines is neither a constitutional error nor a complete miscarriage of justice. *See Spencer*, 773 F.3d at 1140; *see also Roberson v. United States*, No. 2:15-cr-10, 2018 WL 1746132, at *10 (S.D. Ga. Apr. 11, 2018) ("Roberson's claim that the Court improperly calculated his offense level at his sentencing hearing is not a constitutional one.").

Because Kemp can demonstrate neither cause nor actual prejudice, he has procedurally defaulted his guidelines claim, which should be dismissed.

### D.   *Kemp's collateral-attack waiver precludes his guidelines challenge.*

Finally, this Court should dismiss Kemp's § 2255 motion based on the collateral-attack waiver in his plea agreement. The Eleventh Circuit has repeatedly upheld waivers of appellate and post-conviction rights executed as part of a plea agreement. *See United States v. DiFalco*, 837 F.3d 1207, 1220 (11th Cir. 2016); *United States v. Bascomb*, 451 F.3d 1292, 1296-97 (11th Cir. 2006); *United States v. Buchanan*, 131 F.3d 1005, 1009 (11th Cir. 1997); *see also United States v. Huff*, 726 F. App'x 765, 766 (11th Cir. 2018); *United States v. Murphy*, 502 F. App'x 880, 881-82 (11th Cir. 2012); *United States v. Ramos*, 433 F. App'x 893, 896-97 (11th Cir. 2011). Where a defendant entered into the plea agreement and waiver knowingly and voluntarily, and where the defendant's collateral challenge falls within the scope of that waiver, the agreement must be enforced and the collateral challenge dismissed. *See United States v. Hardman*, 778 F.3d 896, 899 (11th Cir. 2014) ("A valid and enforceable appeal waiver, however, only precludes challenges that fall within its scope."); *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) ("A sentence

9

appeal waiver must be made knowingly and voluntarily."). "A waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." *Johnson*, 541 F.3d at 1066. Further, as to scope, the Eleventh Circuit explains that "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005).

Kemp's guilty plea was knowingly and voluntarily entered.  Here, the plea agreement expressly outlines the terms of the collateral-attack waiver.  (Doc. 18, ¶ 10(b).)  The plea agreement informed Kemp about the charges, the elements of the offense, the factual basis, and the statutory range of punishment.  (Doc. 18, ¶¶ 1-3.)  It stated the constitutional rights Kemp waived by pleading guilty.  (Doc. 18, ¶ 11.)  The plea agreement described the Court's use of the sentencing guidelines.  (Doc. 18, ¶¶ 4-5.)  Kemp signed his name, acknowledging he read and understood the plea agreement, and voluntarily agreed to it.  (Doc. 18 at 9.)  The Court reviewed the plea agreement with Kemp at the Rule 11 hearing, including the collateral attack waiver, and it accepted his guilty plea.  (Doc. 46 at 10-12, 19-20.)

Therefore, the record demonstrates that Kemp knowingly and voluntarily entered into the plea agreement and its collateral-attack waiver.  *See Johnson*, 541 F.3d at 1066.  As such, Kemp's challenge to his guidelines calculations is not covered by the sole exception in the collateral-attack waiver, and it falls within the waiver's scope; therefore, Kemp's motion should be dismissed.  *See Hardman*, 778 F.3d at 899;

*Grinard-Henry*, 399 F.3d at 1296; *see also United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999) ("Waiver would be nearly meaningless if it included only those appeals that border on the frivolous.").

## Conclusion

For the foregoing reasons, the United States respectfully requests that Kemp's § 2255 motion be dismissed.  (Doc. 43.)

Respectfully submitted,

JILL E. STEINBERG
UNITED STATES ATTORNEY

*/s/ Justin G. Davids*

Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
*justin.davids@usdoj.gov*

P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422

11

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court. Additionally, a copy has been mailed to:

Joseph D. Kemp, Reg. No. 21821-021
FCI Gilmer
Federal Correctional Institution
Inmate Legal Mail
P.O. Box 6000
Glenville, West Virginia 26351

This April 19, 2023.

JILL E. STEINBERG
UNITED STATES ATTORNEY

*/s/ Justin G. Davids*
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
*justin.davids@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422